

1
2
3
4
5
6
7
8  UNITED STATES DISTRICT COURT
9  FOR THE CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
10
11 | In the Matter of the Arbitration Between ) ED CV 02-631 RT (SGLx)
12 | CHINA NATIONAL METAL PRODUCTS ) ORDER GRANTING PETITIONER CHINA
   | IMPORT/EXPORT COMPANY, ) NATIONAL METAL PRODUCTS
13 |  ) IMPORT/EXPORT COMPANY'S MOTION
   | Petitioner, ) TO CONFIRM FOREIGN ARBITRAL
14 |  ) AWARD PURSUANT TO THE UNITED
   | v. ) NATIONS CONVENTION ON THE
15 |  ) RECOGNITION AND ENFORCEMENT OF
   | APEX DIGITAL, INC , ) FOREIGN ARBITRAL AWARDS
16 |  )
   | Respondent )
17 |  )
18

19   The court, Judge Robert J Timlin, has read and considered petitioner China National Metal
20 Products Import/Export Company ("China National")'s motion to confirm foreign arbitral award
21 ("Motion"), Respondent Apex Digital, Inc ("Apex")'s opposition, China National's Reply and
22 Notice of Chinese Court's rejection of Apex's law suit seeking to vacate the CIETEC award.
23 Based on such consideration, the court concludes as follows

24                                    I
25                              BACKGROUND[1]
26 Apex is a California corporation with its principal place of business in Ontario, California
27
28

---

[1] Both China National's and Apex's requests for judicial notice and China National's Supplemental Request for Judicial Notice are granted and the Court considers the requested documents and their content

1  Apex imports consumer electronic goods, such as televisions and DVD players, which it sells under
2  its own brand name to retailers such as Circuit City, K-Mart, and Best Buy.
3      China National is a corporation organized under the laws of, and doing business in, the
4  People's Republic of China ("China") Chinese companies are permitted to import and export
5  goods only if they have a Chinese government license granting them foreign trade rights China
6  National has been granted such rights and makes its principal business facilitating trade between
7  Chinese and foreign companies
8      In early 2000, Apex became interested in purchasing DVD players manufactured by Jiangsu
9  Shinco Electronic Group Company ("Shinco") Shinco does not have foreign trading rights, so
10 Apex and China National reached an agreement whereby China National would purchase DVD
11 players from Shinco and then export those DVD players to Apex.
12     Between July and September 2000, China National and Apex entered into a series of
13 written contracts in which Apex agreed to purchase AD-800, AD-703 and AD-500A model DVD
14 players from China National (the "Contracts"). The Contracts specify the number of DVD players
15 ordered and the price for each DVD player Paragraph 15 of each of the contracts provides

> Arbitration· All disputes from or in connection with this Contract shall be submitted to the China International Economic and Trade Arbitration Commission ["CIETAC"] for arbitration which shall be conducted by the Commission in Beijing or by its Shenzhen Sub-Commission in Shenzhen or by its Shanghai Sub-Commission in Shanghai at the Claimant's option in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral award is final and binding upon both parties

20     Pursuant to the Contracts, between July and December 2000, China National shipped the
21 DVD players to Apex which Apex agreed to purchase under the Contracts. An invoice reflecting
22 the amount due under the Contracts accompanied each of the shipments
23     Apex received a variety of customer complaints regarding defective Shinco DVD players
24 and experienced a higher than normal rate of return with respect to the AD-500A and AD-703
25 DVD players Despite notice of the defects, Apex continued to order AD-500A and AD-703 DVD
26 players and ship them to retailers
27     In October and November 2000, Apex informed China National that because of the
28 numerous defects the DVD players exhibited, it considered China National to be in breach of

contract. Sometime after December 29, 2000, Apex withheld payment on invoices for DVD players which China National had shipped between August and November 2000. China National made written demands for payment on the remaining invoices, but Apex refused to pay.

China National filed a complaint in this court against Apex stating claims for breach of contract and an account stated. On February 26, 2001, China National filed an application for a writ of attachment to ensure that it would be able to recover from Apex in the event that China National prevails in arbitration. The magistrate judge granted this application in the amount of $18,975,059. On June 13, 2001, this court granted Apex's motion for review and reconsideration of the magistrate judge's order, set aside the order granting China National's application for a writ of attachment, dismissed China National's claims, and referred the matter to arbitration before the China International Economic and Trade Arbitration Commission ("CIETAC Commission"). See China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc., 155 F. Supp. 2d 1174 (C.D. Cal. 2001).

In addition to the judicial proceedings in this court, Apex filed on March 6, 2001 a Statement of Claims with the CIETAC Sub-Commission in Shanghai ("CIETAC-Shanghai") China National filed a Statement of Claims with CIETAC in Beijing ("CIETAC-Beijing") on March 12, 2001. CIETAC-Beijing issued a Notice of Arbitration on March 13, 2001, and CIETAC-Shanghai issued a Notice of Arbitration on March 19, 2001. On April 4, 2001, Apex sent CIETAC-Beijing an objection to China National's application for arbitration, claiming that China National's claims should be raised as counter-claims in the Shanghai arbitration, which had been filed first. CIETAC-Beijing rejected Apex's objections in a written decision dated June 12, 2001, concluding that the cases could be heard separately because they concern different claims. CIETAC-Beijing also stated that because China National met all the requirements for arbitration before it, it lacked the power to reject China National's application or to force China National to raise its claims before CIETAC-Shanghai. CIETAC-Beijing subsequently rejected Apex's request for reconsideration of its decision.

On October 8, 2001 CIETAC-Beijing arbitration panel conducted an arbitration hearing On December 7, 2001 the CIETAC-Shanghai arbitration panel held an arbitration hearing.

3

On May 15, 2002, the arbitral tribunal of CIETAC-Beijing issued a final partial award to China National in the amount of $10,718,921 plus 7% interest (accruing from February 5, 2001) The tribunal arrived at this amount by subtracting the dollar value of Apex's counterclaims for defective goods (to be determined in the Shanghai arbitration) from the dollar value of China National's claims for nonpayment of goods  The tribunal concluded that regardless whether Apex was justified in withholding payment for any damaged goods, it had not been justified in withholding payment for all goods, both damaged and nondamaged  The tribunal also rejected Apex's objection to its jurisdiction over the arbitration, stating that the arbitrators had no power to withhold jurisdiction since CIETAC-Beijing had already decided the issue

China National filed a motion to confirm the CIETEC-Beijing award in this court on June 25, 2002, contending that Apex has failed to voluntarily satisfy the award since it was made  Apex filed a petition to vacate the award with the Beijing No 2 Intermediate People's Court ("Chinese Court") on June 28, 2002, arguing that CIETAC-Beijing did not have jurisdiction to accept China National's application for arbitration under Article 12 of the CIETAC arbitral rules.  On August 17, 2002 the Chinese Court rejected Apex's petition

## II

## ANALYSIS

**A.    Standard Governing Motion to Confirm Foreign Arbitral Award**

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Awards ("Convention"), June 10, 1958, 21 U S.T 2517, T I A S 6997, 330 U N.T.S 38, reprinted at 9 U S.C § 201 (West 1999), provides for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought " Glencore Grain Rotterdam B V v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119-1120 (9th Cir. 2002), Convention, art I(1), 21 U.S.T. 2517  The Convention has been codified by Congress as Chapter II of the Federal Arbitration Act ("FAA"), Pub L 91-368, 84 Stat 692 (1970) (codified at 9 U S.C. §§ 201-208)  Id.  The FAA vests original jurisdiction over proceedings falling under the Convention in the district courts regardless of the amount in controversy.  9 U S C § 203  The FAA further provides:

4

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal[2] or deferral of recognition or enforcement of the award specified in the said Convention

9 U.S.C. § 207. The Convention also gives courts discretion to adjourn enforcement proceedings where an application has been made in the originating country to have the arbitral award set aside. Europcar Italia, S.p.A v. Maiellano Tours, Inc., 156 F.3d 310, 316 (2nd Cir. 1998) (citing Art. VI of the Convention[3]). China is a signatory to the Convention. See notes following § 201, U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 151 (2nd Cir. 2001).

---

[2]partial The grounds for refusing to recognize or enforce an arbitral award include:

(a) The parties to the agreement referred to in Article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made, or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or the arbitration proceedings or was otherwise unable to present [his or her] case, or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain decisions on matters submitted to arbitration may be recognized and enforced, or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place, or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made

Convention, Art. V(1)

[3] Article VI provides:

If an application for the setting aside or suspension of the award has been made to a competent authority [of the country in which, or under the law of which, that award was made], the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security

5

There is a strong presumption in favor of the enforcement of foreign arbitral awards under the Convention. See Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764, 770 (9th Cir. 1992) (a district court's review of a foreign arbitration award is "quite circumscribed"), Ministry of Def. and Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc., 29 F. Supp. 2d 1168, 1171 (S.D. Cal. 1998) (recognizing substantial deference given to foreign arbitration awards).

**B.    China National's Motion to Confirm Arbitral Award**

Apex challenges the arbitral award under Art. V(1)(d) of the Convention on the grounds that the CIETAC-Beijing arbitration proceeding violated the Contracts between China National and Apex and setting aside the arbitration provision of such agreement, the proceedings violated Chinese law. It claims that both the contracts between the parties and Article 12 of the CIETAC rules render the location where the arbitration proceeding is first filed binding on the parties. It contends that because Apex filed its Statement of Claims with CIETAC-Shanghai six days before China National filed its Statement with CIETAC-Beijing, China National's claims should have been referred to CIETAC-Shanghai rather than being allowed to proceed as a separate arbitration before an arbitration panel in CIETAC-Beijing. Apex further contends that if this court is inclined to confirm the arbitral award, it should stay the proceedings until the Beijing No. 2 Intermediate Court has resolved Apex's petition to vacate the award.

China National argues in reply that the award is confirmable and enforceable because CIETAC-Beijing already addressed and resolved the issue of the proper location for arbitration of China National's application before the arbitration even took place. It urges this court to defer to CIETAC's interpretation of its own rules and contends that these rules allow separate arbitration proceedings for separate cases. China National also claims that Apex has suffered no prejudice from the Beijing arbitration because the final partial award takes into account the full value of Apex's claims in the CIETAC-Shanghai arbitration proceeding. Finally, China National claims that the requirements for a stay of enforcement as set forth in Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 317-18 (2nd Cir. 1998) have not been met. It urges the court to confirm the award in light of the strong public policy in favor of enforcing foreign arbitral awards. See

6

Ministry of Def., 969 F 2d at 770 ("the public policy in favor of international arbitration is strong ") (quoting Fotochrome, Inc v. Copal Co., 517 F 2d 512, 516 (2d Cir 1975))

The court will first determine whether Apex has presented a valid defense to the recognition and enforcement of the CIETAC-Beijing final partial award under Article V(1)(d) of the Convention Paragraph 15 of the Contracts between the parties provides

> ARBITRATION All disputes arising from or in connection with this Contract shall be submitted to China International Economic and Trade Arbitration Commission for arbitration which shall be conducted by the Commission in Beijing or by its Shenzhen Sub-Commission in Shenzhen or by its Shanghai Sub-Commission in Shanghai at the Claimant's option in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration The arbitral award is final and binding upon both parties

In addition, Article 12 of the CIETAC Rules provides.

> The parties may agree to have their dispute arbitrated by the Arbitration Commission in Beijing or by the Shenzhen Sub-Commission in Shenzhen or by the Shanghai Sub-Commission in Shanghai
>
> In the absence of such an agreement, the Claimant will have option to submit the case to be arbitrated by the Arbitration Commission in Beijing or by the Shenzhen Sub-commission in Shenzhen or by the Shanghai Sub-Commission in Shanghai
>
> When deciding on where the case should be arbitrated, the first choice should be final In case of any dispute, the Arbitration Commission will make a decision accordingly

Apex argues that the use of the word "or" in the first paragraphs means that arbitration proceedings may only be conducted by one arbitration tribunal, either in Beijing, Shenzhen, or Shanghai It further argues that its filing of a Statement of Claims with CIETAC-Shanghai constitutes a "first choice" of arbitration under Art 12 and that CIETAC-Beijing erred in not referring China National's claims to the Shanghai proceeding Apex contends that this error renders the arbitral award unenforceable in either China or the United States.

Apex presented these same arguments to CIETAC-Beijing. In rejecting these arguments, the Beijing Commission concluded that the claims filed by China National with CIETAC-Beijing constituted a separate dispute from the claims filed by Apex in Shanghai Specifically, the CIETAC-Commission noted that while eight of the Contracts were common to both parties' applications, Apex's application included one additional Contract and one additional type of DVD

7

player.[4] The CIETAC-Commission further stated that China National had fulfilled all of the requirements for arbitration in CIETAC-Beijing and that it had no power to force China National to raise its claims as a counterclaim in the CIETAC-Shanghai proceeding.

In support of the CIETAC-Commission's findings, China National has submitted a declaration by Fei Zonghi, a former member of the Adjudication and Advisory Committees of the Supreme People's Court and a current Vice-Chairman, member and arbitrator of CIETAC. The declaration explains that:

> In arbitration before CIETAC, after one party applies for an arbitration, the other party has the right to present counterclaims. The Arbitration Commission may merge the original claims by the claimant with the counterclaims by the respondent in a combined hearing. Instead of presenting counterclaims, however, the other party may instead apply for a new arbitration hearing with respect to its claims. The party has the sole discretion to decide whether to present a counterclaim or apply for a new arbitration hearing.

China National argues that it was not required to submit its claims as part of the CIETAC-Shanghai proceedings because it acted as a separate claimant and instituted a new hearing under the CIETAC rules.

The court concludes that Apex has not successfully raised a defense under Article VI(d) of the Convention to enforcement of the final partial arbitral award against it in the CIETAC-Beijing arbitration proceeding. The decision made by CIETAC-Beijing to allow the Beijing arbitration to proceed complied with Article 12's provision that "[i]n case of any dispute, the Arbitration Commission will make a decision accordingly." Although the CIETAC-Commission's decision to allow two arbitration proceedings to proceed separately appears inconsistent with Article 12's directive that "[w]hen deciding on where the case should be arbitrated, the first choice should be final," the court will not second-guess CIETAC's interpretations of its own procedural rules. This

---

[4] The CIETAC-Commission noted that Apex's application encompassed the following Contracts (the court will refer to the Contracts by their last three numbers, as the prefixes of the Contracts–00US11WSC85210– are identical): 303, 208, 224, 232A, 232A-1, 232A-2, 271, 271A-1, and 301. The CIETAC-Commission stated that China National's application encompassed the following Contracts: 208, 224, 232A, 232A-1, 232A-2, 271, 271A-1, and 301. Contract 303 is the only contract not included in both applications.

The CIETAC-Commission also noted that Apex's application involved the AD-800A, AD-500A, and AD-703 DVD players, while China National's application involved only the AD-500 and AD-703 DVD players.

This is so particularly in light of the explanation by a Vice-Chairman, member, and arbitrator of CIETAC that claims and counterclaims between parties may constitute separate disputes under CIETAC procedures

The court further notes that Apex is not challenging the substantive outcome of the CIETAC-Beijing arbitration, but rather a preliminary venue type matter There is no indication that the arbitration itself was not conducted in accordance with established CIETAC rules and procedures or that it prejudiced Apex in any way See Karaha Bodas Company, L L C. v Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 190 F Supp. 2d 936, 945 (S D. Tex 2001) (awards based on alleged procedural violations should only be set aside if they resulted in substantial prejudice) Finally, this court is mindful of the strong presumption in favor of the validity of foreign arbitral awards under the Convention See Ministry of Def. and Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys , Inc , 29 F. Supp. 2d 1168, 1171 (S D Cal. 1998) ("[t]here is a general pro- enforcement bias under the Convention . [u]pon application for an order confirming the award, the district court has little discretion")

The Court will grant China National's motion to confirm CIETAC-Beijing's final partial award.

Having concluded that the final partial award is valid and enforceable, the court will next address Apex's request for a stay of enforcement pending the Beijing Intermediate Court's ruling on Apex's lawsuit to vacate the award Article IV of the Convention gives courts discretion to enjoin enforcement proceedings where one party has moved to set aside the award in its country of issue

This request, however, is now moot because the Beijing Intermediate Court considered Apex's lawsuit seeking to quash the partial arbitration award by CIETAC-Beijing and rejected the application on August 27, 2002 This Chinese Court decision is final and not appealable See Declaration of Lu Zhifang, dated September 9, 2002.

## III

## **DISPOSITION**

Accordingly, IT IS ORDERED THAT

(1) Petitioner China National's motion to confirm the final foreign partial arbitral award is GRANTED;

(2) The Clerk enter judgment on the award.

DATED: January 21, 2003

*Robert J. Timlin*
ROBERT J TIMLIN
United States District Judge